# 2001 DTA 165

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL VI DE CAGUAS/HUMACAO/GUAYAMA

CARMEN I. RIVERA RODRIGUEZ
Demandante-Apelante

v.

WAL-MART PUERTO RICO
Demandado-Apelado

Núm. KLAN-2000-01172

San Juan, Puerto Rico, a 16 del mayo de 2001

Panel integrado por su Presidente, el Juez Soler Aquino,
y los Jueces Colón Birriel y Escribano Medina

Escribano Medina, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Comparece ante nos, la demandante-apelante, Carmen I. Rivera Rodríguez, solicitando la revocación de la sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Guayama, (Hon. Eduardo Grau Acosta, J.) el 23 de agosto de 2000. Mediante ésta, se desestimó la demanda incoada a tenor con la Regla 39.2(C) de las de Procedimiento Civil y se impuso el pago de costas a la parte demandante.

### I

El 3 de julio de 1997, la demandante-apelante, Carmen I. Rivera Rodríguez, visitó la tienda Wal-Mart de Guayama en compañía de su hija y de un amigo de su hija. Mientras caminaba por los pasillos de la tienda observando la mercancía se resbaló súbitamente, cayendo de espalda, quedando su pierna izquierda pinchada con su cuerpo. Tanto su hija como el amigo de ésta se percataron del accidente por el grito que soltó al caer. La demandante comenzó a incorporarse, mientras su hija y su amigo buscaban asistencia de la gerencia.

Luego de incorporarse, la demandante notó que su ropa estaba toda mojada con agua clara, por lo que entiende que el agua causó su caída. Después de transcurridos menos de 10 minutos, acuden los empleados de la tienda a asistirla y a llenar los informes correspondientes. A su vez, secaron el área, colocaron un cono de seguridad y trajeron una silla para la demandante. La demandante permaneció en la tienda haciendo compras por aproximadamente 30 a 45 minutos.

La demandante no quiso ir al hospital luego del incidente, aunque declaró que le dolía la espalda y la pierna izquierda. Alegó que a causa de estas dolencias, no pudo ir a trabajar por tres semanas, por lo que el 24 de julio de 1997 fue al hospital municipal. Allí le sacaron placas, le pusieron inyeccioness para el dolor y se le diagnosticó un espasmo muscular. Según su testimonio, no podía hacer fuerza, su esposo dejó de trabajar para atenderla. También declaró que ha seguido mal de la espalda, la pierna le falla, tiene desbalance y a veces se cae.

En el contrainterrogatorio, la demandante declaró que desde años antes del accidente fue tratada de alta presión y mala circulación. En enero de 1998 y junio de 1999, sufrió ataques cardiacos. Esta condición la tiene hace varios años y le causa mareos. La demandante había dejado de trabajar antes de su caída en la tienda Wal-Mart.

El 12 de junio de 1998, la demandante-apelante presentó una demanda ante la Sub-Sección de Distrito, Sala de Guayama, reclamando por los alegados daños sufridos al haberse caído en la tienda Wal-Mart de Guayama el día 3 de julio de 1997. Luego de varios incidentes procesales, las partes radicaron su Informe Sobre

Conferencia Preliminar Entre Abogados, celebrándose una conferencia con antelación al juicio el 28 de diciembre de 1999. Finalmente, se señaló y se celebró el juicio en su fondo el 15 de agosto de 2000.

La prueba de la parte demandante consistió del testimonio de la demandante Carmen I. Rivera Rodríguez. Luego de finalizado el testimonio de la demandante, su abogado intentó que se admitiera en evidencia un documento producto de la contestación a unos interrogatorios cursados por la demandante. Este documento alegadamente contenía unas admisiones producto de una investigación interna sobre el accidente. La prueba tenía el propósito de probar que se encontró un líquido en el piso y el hallazgo de la persona que limpió el piso. La parte demandada se opuso a la presentación de esta evidencia porque entiende que dicho documento no se menciona como parte de la prueba documental en el Informe Sobre Conferencia Preliminar al Juicio. La parte demandante alegó que sí surge en el Informe, más específicamente en la Sección 13. ■ El tribunal de instancia finalmente denegó la solicitud instada por la parte demandante por entender que es improcedente en derecho la admisión de tal documento.

De esta manera, la parte demandante da por sometido su caso. La parte demandada procedió entonces a argumentar una Moción de Desestimación de la demanda al amparo de la Regla 39.2(C) de las de Procedimiento Civil. El 23 de agosto de 2000, el tribunal de instancia, mediante Sentencia, procedió a desestimar la demanda incoada.

Inconformes con el resultado, la parte demandante recurre ante el Tribunal de Circuito de Apelaciones mediante la presentación de Escrito de Apelación el día 23 de octubre de 2000. Arguye que el tribunal de instancia cometió los siguientes errores:

*"Incurrió en error manifiesto el Tribunal Superior al fundar su sentencia en una interpretación incorrecta de la jurisprudencia del Tribunal Supremo de Puerto Rico en lo concerniente a caídas por condiciones peligrosas en establecimientos comerciales abiertos al público y la responsabilidad de éstos hacia sus clientes o invitados.*

*Incurrió en error el Tribunal Superior al desestimar la demanda y no aplicar la doctrina de negligencia comparada.*

*Incidió el Tribunal Superior al no permitir la presentación de una contestación a un interrogatorio como admisión de la parte demandada-apelada, cuyo contenido aportaría a demostrar el conocimiento que tenía Wal-Mart de la existencia de la condición peligrosa o a que se pudiera imputar a ésta el deber de conocerla."*

## II

Es principio cardinal de derecho que cuando una empresa mantiene abierto al público un establecimiento con el objeto de llevar a cabo operaciones comerciales para su propio beneficio, debe hacer lo posible por mantener dicho establecimiento en condiciones de seguridad tales, que sus clientes no sufran daño alguno. *Cotto v. C.M. Ins. Co.*, 116 D.P.R. 644 (1985); *Aponte Betancourt v. Meléndez*, 87 D.P.R. 652 (1963).

No obstante, se ha sostenido que el dueño de un establecimiento no es asegurador absoluto de la seguridad de sus clientes, y que su deber sólo se extiende al ejercicio del cuidado razonable; razón por la cual el demandante tendrá que probar que el dueño del establecimiento no ha ejercido el debido cuidado para que el local sea uno seguro. *Goose v. Hilton Hotels*, 79 D.P.R. 523 (1956).

En los casos de daños y perjuicios, específicamente a consecuencia de caídas, la parte demandante deberá probar como parte esencial de su causa de acción, la existencia de la condición peligrosa que alegadamente ocasionó la caída, y que dicha condición era de conocimiento de la parte demandada o que podría imputarse a ésta tal conocimiento. *Cotto v. C.M. Ins. Co.*, supra. Véanse además, *Rosado Feliciano v. Supermercado Mr. Special*, 139 D.P.R. 946 (1996); *Maldonado v. Interamerican University*, 104 D.P.R. 420 (1975).

Conforme a la jurisprudencia antes citada, para poder imputar negligencia a un establecimiento comercial por los accidentes sufridos dentro del mismo, la prueba de la parte demandante no puede apoyarse únicamente en establecer la existencia de una condición peligrosa. Paralelo con esta visión, el Tribunal Supremo de Puerto Rico en el caso de *Alberto O. Bacó v. Almacén Ramón Rosa Delgado, Inc.*, **2000 J.T.S. 122**, eliminó de nuestro derecho la figura angloamericana del *res ipsa loquitur*.

La doctrina de *res ipsa loquitur* requiere la conjunción de tres hechos: (1) de ordinario, el accidente no debe ocurrir a no ser por la negligencia de otra persona; (2) debe causarlo una agencia o instrumentalidad dentro del control exclusivo del mandato; y (3) no debe ocurrir debido a acción voluntaria alguna del demandante. *Nieves López v. Rexach Bonet*, 124. D.P.R. 427 (1989); *Marrero, Marrero, Ríos v. Albany Ins. Co.*, 124 D.P.R. 827 (1989).

El mero hecho de que acontezca un accidente, no da lugar a inferencia alguna de negligencia. *Cotto v. C. M. Ins. Co., supra*. El Art. 1302 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 5141, fuente de nuestro derecho de daños, no permite tal conclusión. Para que prospere una acción en daños en nuestra jurisdicción, es preciso que el demandante demuestre, por preponderancia de prueba, la realidad del daño sufrido, la existencia de un acto u omisión negligente y, además, el elemento de causalidad. La suficiencia, contundencia o tipo de prueba presentada, así como el valor que los tribunales le darán, dependerá, naturalmente, de las circunstancias particulares de cada caso de conformidad con nuestro derecho probatorio. Sin embargo, la prueba presentada deberá demostrar que el daño sufrido se debió con mayores probabilidades a la negligencia que el demandante imputa. Se requiere, además, que la relación de causalidad entre el daño sufrido y el acto negligente no se establezca a base de una mera especulación o conjetura. *Castro Ortiz v. Mun. de Carolina*, 134 D.P.R. 783 (1993); *Rodríguez Crespo v. Hernández*, 121 D.P.R. 639 (1988). Véase, además, José Puig Brutau, *Fundamentos de Derecho Civil*, T. II, V. II, 1983; Barcelona, a las págs. 110-104; J. Santos Briz, *La Responsabilidad Civil*, 7ma ed., T. I, Madrid, pág. 245.

Nos resta evaluar si la prueba presentada por la parte demandante a la luz de la doctrina sobre caídas en establecimientos comerciales, cumple con los requisitos jurisprudenciales. El primer requisito que debe probar la parte demandante es la existencia de la condición peligrosa que alegadamente ocasionó la caída. De una lectura del testimonio en corte de la demandante, podemos concluir que este requisito se cumplió. De su testimonio se desprende que un líquido claro se encontraba en el piso al momento de su caída. Inmediatamente se levantó del piso, luego de la caída, pudo percatarse que su copa estaba empapada y que había más agua en el piso que posteriormente secaron los empleados de la tienda.

El segundo requisito que debe probar la demandante es que dicha condición era de conocimiento de la parte demandada o que podría imputarse a ésta tal conocimiento. Para poder probar este hecho la parte demandante intentó presentar un documento que fue incluido como contestación a un interrogatorio enviado a la parte demandada. El tribunal de instancia no permitió la presentación de dicho documento.

Para poder evaluar esta prueba que intentó presentar la parte demandante debemos auscultar si se produjo o no una oferta de prueba según lo dispone la Regla 5 de Evidencia y la jurisprudencia relacionada.

La Regla 5 de Evidencia, 32 L.P.R.A. Ap. IV, R. 5, dispone que no se dejará sin efecto una determinación de exclusión de evidencia, ni se revocará sentencia o decisión alguna por motivo de exclusión errónea de evidencia, a menos que la evidencia fuera erróneamente excluida, a pesar de que la naturaleza, propósito y pertinencia de la misma fue traída a la atención del tribunal mediante oferta de prueba por cualquier modo, y que el tribunal revisor que considera el efecto de la exclusión errónea entienda que ésta fue factor decisivo o sustancial en la sentencia o decisión cuya revocación se solicita.

A tenor con la regla antes citada, se ha determinado que cuando el alegado error es de exclusión de evidencia, la parte perjudicada por el error es el proponente de la evidencia. En este caso, la objeción debe

hacerse mediante una oferta de prueba. En razón de ello, la norma general es que la parte que desea la inclusión de la evidencia excluida debe hacer constar en el récord, con toda la amplitud posible, la naturaleza de la evidencia ofrecida, su pertinencia y propósito, con el fin de que un tribunal apelativo pueda determinar si la prueba, de haber sido admitida por la corte inferior, hubiera justificado un resultado distinto del caso. *Pueblo v. López Rivera*, 102 D.P.R. 359 (1974).

En otras palabras, esta regla le permite a la parte proponente de la evidencia excluida por el Tribunal de Instancia, el acudir ante un tribunal apelativo para argumentar que dicha prueba fue excluida erróneamente, y que de haberse admitido, hubiera sido un factor decisivo o sustancial en la sentencia que se intenta revocar. No obstante, no se dejará sin efecto una determinación de exclusión de evidencia, ni se revocará sentencia o decisión alguna por motivo de error en la exclusión de prueba, a menos que se cumplan con los dos requisitos antes citados. El primer requisito exige que la parte que plantea la exclusión errónea de la prueba haya hecho una oferta de prueba o su equivalente. *S.J. Credit, Inc. v. Ramírez*, 133 D.P.R. 181 (1982). En esta oferta de prueba, el proponente de la evidencia debe llevar a la atención del tribunal la naturaleza, el propósito y la pertinencia de la prueba. Mientras que el segundo requisito establece que debe probarse que el efecto de la exclusión de la prueba fue un factor decisivo y sustancial en la sentencia cuya revocación se solicita. *S.J. Credit, Inc. v. Ramírez, supra; Pueblo v. Franceschini Sáez*, 110 D.P.R. 794 (1981).

Para evaluar el primer requisito, transcribiremos la parte pertinente según se expone en la exposición narrativa de la prueba que fuere aprobada por el tribunal de instancia.

*"La representación legal de la demandante intentó ofrecer como admisión de parte, parte de las contestaciones interrogatorios que le hizo llegar la demandada.*

*La parte demandante argumentó que, de permitirse la prueba, relacionada con una investigación interna de la parte demandada, se desprendería qué liquido se encontró y qué halló la persona que limpió el piso.*

*Se informó al Tribunal, por la parte demandante, que la Parte XIII del Informe de Conferencia con Antelación a Juicio, la parte demandante se reservó el derecho de utilizar la contestación al interrogatorio conforme lo permiten las Reglas de Evidencia y que su contenido era una admisión."* ■

Podemos concluir que sí hubo una oferta de prueba, ya que la demandante llevó a la atención del tribunal la naturaleza, el propósito y la pertinencia de la prueba.

Establecido esto, procedemos a evaluar si el efecto de la exclusión de la prueba fue un factor decisivo y sustancial en la sentencia cuya revocación se solicita. La prueba que intentó presentar la parte demandante, la transcribimos a continuación:

*"Llstale - - called assoc. Fernando Rodríguez at home, SSN: 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, been with company/store 3 1/2 yrs, sales in auto.*

*Said that he was attending a customer when this gentleman interrupped them rudely wanted help. Fernando told him that he would help him in just a moment, when he finished with other customer. Gentleman then wanted to know if there was a rag anywhere around. When Fernando asked what he needed, gentleman said "follow me", never told him what had happened. Said that about 5 or 6 aisle down, said that he told him that mother in law had s/f. Said that when they arrived at the hardware area, there wasn't any assoc. in area. Said that clmt was up, and sitting on a 5 gal. Bucket of paint, semi leaning on the...*

*Llstale - - said that it was a little swollen. Said that clmt had on casual sandles, said that spill was about 2 or 3 tiles big, said there was a glass on the 2nd shelf up from the floor. Said that it looked like someone spilt ice on the floor and it melted, looked like it was starting to dry, was tracked thur with s/carts. Couldn't say when last assoc. was in the aisle.*

*Said that he had called, so arrived at once. He then took over."* ■

Esta prueba por sí sola no configura el segundo requisito en casos de daños y, perjuicios por caídas en establecimientos comerciales, a saber, que dicha condición era de conocimiento de la parte demandada o que podría imputarse a ésta tal conocimiento. Lo que surge de esta prueba es que un empleado de Wal-Mart encontró a una señora sentada en una paila de pintura, agua en el piso y marcas de un carrito de compras a través del charco. Esto no establece que la tienda tuviera conocimiento o que se le pudiera imputar el mismo. La prueba excluida no tuvo efecto, ni fue un factor decisivo y sustancial en la sentencia cuya revocación se solicita. Por lo tanto, procedemos a confirmar la sentencia desestimatoria debido a que la parte demandante no pudo probar los dos requisitos jurisprudenciales en casos de daños y perjuicios por caídas en establecimientos comerciales.

Por los fundamentos antes expuestos, se confirma la sentencia emitida por el tribunal de instancia.

Así lo acordó y manda el Tribunal y lo certifica la Subsecretaria General.

Gladys E. Ortega Ramírez
Subsecretaria General

### ESCOLIOS 2001 DTA 165

1. Informe Sobre Conferencia Preliminar entre Abogados, pág. 7. *"Se cursó un interrogatorio a la parte demandada, el cual fue contestado y dicha contestación podría ser utilizada, a tenor con las Reglas de Evidencia."*

2. Exposición Narrativa de la Prueba aprobada por el Tribunal de Primera Instancia, págs. 3 y 4.

3. Apéndice de la parte demandante, págs. 27 y 28.