Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| TERESITA C. RIERA CARRIÓN<br><br>RECURRIDO<br><br>v.<br><br>JUAN C. ALBORS LAHONGRAIS<br><br>PETICIONARIO | TA2025AP00578 | Apelación procedente del Tribunal de Primera Instancia, Centro Judicial Sala de Superior de Puerto Rico<br><br>Sobre:<br>Acción división de bienes gananciales<br><br>Caso núm.:<br>SJ2021CV03041 |

Panel integrado por su presidenta, la Jueza Grana Martinez, el Juez Santiago Calderón y Juez Robles Adorno.[1]

Robles Adorno, Juez Ponente.

## RESOLUCIÓN

En San Juan, Puerto Rico, a 19 de diciembre de 2025.

El 22 de noviembre de 2025, el señor Juan C. Albors Lahongrais (el señor Albors Lahongrais o el peticionario) presentó un recurso de *Apelación*[2] en el que solicitó que revoquemos la *Resolución* emitida el 27 de agosto de 2025, notificada el 12 de octubre de 2025, por el Tribunal de Primera Instancia, Sala Superior de San Juan (TPI o foro primario).[3]

En el aludido dictamen, el foro primario declaró Con Lugar la solicitud de anticipo o adelanto instada por la señora Teresita C. Riera Carrión (la señora Riera Carrión o la recurrida) y, por tanto, ordenó que el peticionario le proveyera a la recurrida un adelanto por la suma de un millón de dólares ($1,000,000) con relación a la liquidación de bienes post ganancial.

---

[1] Véase OATA-2025-233 del 2 de diciembre de 2025 en la que se designa al Juez Robles Adorno en sustitución del Juez Abelardo Bermúdez Torres.

[2] Por el peticionario recurrir de una Resolución, acogeremos el recurso como un Certiorari. Por razones de economía procesal, hemos decidido conservar la clasificación alfanumérica asignada por la Secretaría de este Tribunal.

[3] Entrada Núm. 630 del caso Núm. SJ2021CV03041 en el Sistema Unificado de Manejo y Administración de Casos (SUMAC).

Por los fundamentos que expondremos a continuación, denegamos la expedición del auto de *certiorari.*

**I.**

El caso de epígrafe tuvo su origen el 19 de mayo de 2021, cuando la señora Riera Carrión instó una *Demanda* en la que alegó que el 19 de noviembre de 1994, contrajo matrimonio con el peticionario bajo el régimen de sociedad legal de bienes gananciales.[4] Arguyó que, durante su matrimonio, ambos adquirieron bienes muebles e inmuebles, activos y pasivos que formaron parte del caudal común, crearon corporaciones y participaron en diversos negocios jurídicos. Adujo que, a partir del 2007 el peticionario comenzó a rendir planillas de forma separada y realizó gastos que fueron utilizados en detrimento de la sociedad legal de bienes gananciales. Así las cosas, el 18 de julio de 2008, la recurrida radicó una *Demanda* de divorcio, la cual el 1 de marzo de 2012 advino una *Sentencia* final y firme. No obstante, la señora Riera Carrión argumentó que el peticionario ha mantenido el control de los bienes post gananciales. Consecuentemente, la recurrida solicitó que, el TPI ordenara la tasación y el avalúo de los bienes que componen la comunidad de bienes post ganancial en aras de efectuar la liquidación de bienes post gananciales.

El 14 de julio de 2021, el señor Albors Lahongrais radicó una *Contestación a demanda* en la que negó, en su mayoría, las alegaciones interpeladas por la recurrida.[5] Señaló que, la señora Riera Carrión incoó dos (2) veces una *Demanda* sobre la liquidación de bienes post gananciales en la que la primera fue desestimada y la segunda fue retirada de forma voluntaria. Asimismo, sostuvo que, ambos lograron un acuerdo sobre la venta de la propiedad en la que reside la recurrida y que este le pagaría el alquiler de una propiedad

---

[4] Entrada Núm. 1 del caso Núm. SJ2021CV03041 en el SUMAC.
[5] Entrada Núm. 13 del caso Núm. SJ2021CV03041 en el SUMAC.

para que residiera en ella. Por otro lado, el señor Albors Lahongrais alegó que, la recurrida ha actuado de mala fe y carece de manos limpias dado que ha vendido acciones y otros activos sin el consentimiento del peticionario. Por tanto, el peticionario solicitó que el foro primario ordenara el inventario y avalúo de los bienes que componen la comunidad post ganancial y, luego, la liquidación de la comunidad de bienes.

En lo pertinente, el 30 de agosto de 2022, la señora Riera Carrión presentó una *Solicitud de adelanto con cargo a la liquidación* en la que solicitó que se señalara una vista evidenciaría para atender el adelanto solicitado por la señora Riera Carrión.[6]

Ante ello, el 26 de enero de 2023, el foro primario emitió una *Orden* en la que declaró Ha Lugar la solicitud de la recurrida con respecto a la celebración de una vista evidenciaría para evaluar si procedía el adelanto solicitado.[7]

Luego de las partes anunciar la prueba que presentarían en la vista evidenciaria, el 24 de febrero de 2023, el TPI informó que se limitará a evaluar la prueba anunciada por las partes durante la vista evidenciaria.[8] Sin embargo, le concedió un término adicional al peticionario para que anunciara prueba adicional dado que la recurrida anuncio otra prueba que utilizaría, posterior al término concedido por el foro primario.

Así pues, 28 de febrero de 2023, el señor Albors Lahongrais instó una *Moción en cumplimiento de orden* en la que informó que presentara como testigo al CPA Alfonso Alsina el cual testificaría sobre los estados financieros auditados de las corporaciones y las planillas de contribución sobre ingresos.[9]

---

[6] Entrada Núm. 97 del caso Núm. SJ2021CV03041 en el SUMAC.
[7] Entrada Núm. 244 del caso Núm. SJ2021CV03041 en el SUMAC.
[8] Entrada Núm. 288 del caso Núm. SJ2021CV03041 en el SUMAC.
[9] Entrada Núm. 292 del caso Núm. SJ2021CV03041 en el SUMAC.

Tras varios incidentes procesales, el 7 de julio de 2025, el TPI celebró una vista sobre la continuación de los procedimientos con respecto a la solicitud de adelanto, en la que el CPA Alfonso Alsina en la que este indicó que no estaba disponible para comparecer en horas de la mañana ese día de la vista.[10] Sin embargo, este compareció en la tarde, tras el foro primario decretar un receso, en el que el CPA Alfonso Alsina fue contrainterrogado por la representante legal de la recurrida.

El 16 de julio de 2025, el señor Albors Lahongrais radicó una *Moción en cumplimiento de orden y en solicitud de que se permita testimonio del demandado* insistió en que el TPI le permitiera testificar sobre las acciones que ha hecho la recurrida en detrimento de los bienes que componen la comunidad de bienes post gananciales.[11] Además, este testificaría, como oferta de prueba, acerca de la venta de una de las propiedades, realizada por la recurrida, la cual ocasionó que el señor Albors Lahongrais no tuviera las ganancias esperadas. Consecuentemente, el peticionario solicitó que se le permitiera declarar para aportar prueba a los fines de exponer las actuaciones temerarias de la recurrida con respecto a la venta de una propiedad.

El 27 de julio de 2025, el foro primario emitió una *Resolución* en la que formuló varias determinaciones de hechos con relación a lo ocurrido en cada vista celebrada.[12] A esos fines, el TPI esbozó doce (12) determinaciones de hechos con relación a la vista celebrada el 8 de julio de 2025, en particular coligió lo testificado por el CPA Alfonso Alsina. En lo pertinente, el foro primario razonó que el peticionario realizó declaraciones sobre las cuales el tribunal no redactó determinaciones de hechos tras considerarlas contradictorias. Asimismo, adujo que, el señor Albors Lahongrais no

---

[10] Entrada Núm. 612 del caso Núm. SJ2021CV03041 en el SUMAC.
[11] Entrada Núm. 613 del caso Núm. SJ2021CV03041 en el SUMAC.
[12] Entrada Núm. 630 del caso Núm. SJ2021CV03041 en el SUMAC.

presentó evidencia en sustento de lo alegado y fue "desmentido" su testimonio. Al respecto, el TPI enumeró los siguientes hechos que no fueron refutados por el peticionario fueron:

1. La construcción de electricidad, plomería, cocina, baños, terraza y pabellón de la casa 332 de Dorado Beach East conllevó una inversión de 1.3 millones que realizó JCAL de fondos privativos, pero no presentó evidencia de dicho prés tamo y no se abundó sobre dichos desembolsos.

2. TRC retuvo, tras el divorcio, 11 cuadros de maestros pintores puertorriqueño y valen entre $700 mil y $800 mil. Sobre esto no se presentó documento en sus tento y fue desmentido por el testimonio de TRC.

3. TRC desde la separación retuvo una cuenta en Santander Securities con alre dedor de $450,000. Sobre esto no se presentó evidencia para sustentar lo ale gado.

4. JCAL realizaba préstamos a DI para que pagara la hipoteca de la 332 de DBE tiene evidencia de esos préstamos realizados a DI, pero no fueron presentados. Alega JCAL se desprende de pagarés y el estado auditado, pero no hizo refe rencia al mismo ni se presentó documento relacionado.

5. JCAL entiende que al 2025 se le deben quinientos mil dólares ($500,000.00) del dinero prestado a DI para la construcción.

6. Alega JCAL que TRC se quedó con ochenta y dos mil acciones de BPPR pertenecientes a las partes, pero TRC alega que las acciones de BPPR eran privativas de estas. No se presentó documento alguno para sustentar dichas manifestaciones, aunque si se tomó en consideración lo detallado en las Determinaciones de Hechos de la Resolución de febrero de 2012 bajo el caso KDI2008-1277 (Exhibit 39 Entrada 608).

El foro primario determinó que el señor Albors Lahongrais limitó el acceso de los dineros, activos y los bienes pertenecientes a la sociedad legal de bienes gananciales. El foro primario enfatizó que la recurrida evidenció que el caudal post ganancial excede los ocho (8) millones de dólares. Además, resolvió que, la señora Riera Carrión logró evidenciar que tenía necesidad de obtener los activos para su sustento y bienestar. Por tanto, resolvió que procedía concederle a la recurrida el anticipo solicitado por la suma de un millón de dólares ($1,000,000).

Insatisfecho, el 11 de septiembre de 2025, el peticionario instó una *Moción de reconsideración* en la que alegó que el foro primario no le permitió presentar documentos para refutar el testimonio de

la señora Riera Carrión para demostrar su falsedad y mendacidad.[13] En esa línea, arguyó que, el TPI no le permitió testificar sobre la falsedad del testimonio de esta. Señaló que, anejó varios documentos en la referida moción, como oferta de prueba para poder presentarlos en la continuación de la vista. Enfatizó que, cuando concluyó el turno del desfile de prueba de la recurrida, el TPI no le permitió presentar su prueba para refutar el testimonio de la señora Riera Carrión. Por ende, solicitó que el foro a quo reconsiderara su determinación y le permitiera presentar su oferta de prueba y dejara sin efecto la *Resolución* recurrida.

El 9 de octubre de 2025, la señora Riera Carrión radicó una *Moción en cumplimiento de orden* en la que argumentó que el peticionario tuvo varias oportunidades para impugnar el testimonio de esta.[14] Además, arguyó que, el peticionario la ha privado de los frutos de los bienes que componen la sociedad legal de bienes post gananciales. De igual forma, resaltó que el peticionario ha sido frívolo dado que es el único que tenía acceso a los bienes post gananciales y, por tanto, ha podido beneficiarse de ello. Por tanto, sostuvo que, no se le debía privar de obtener el pago del adelanto debido a que necesitaba dicha suma para sostenerse.

El 23 de octubre de 2025, notificada el 27 de octubre de 2025, el TPI emitió una *Resolución interlocutoria* en la que declaró No Ha Lugar a la *Moción de reconsideración* instada por el peticionario.[15]

Inconforme, el 22 de noviembre de 2025, el señor Albors Lahongrais instó ante nos una *Apelación* en la que coligó los siguientes señalamientos de error:

> Primer error: Erró el TPI al decretar un adelanto basándose exclusivamente en lo determinado por el Tribunal Supremo en el caso Soto v. Colón, 97 DTS 75 (1997), sin haber recibido prueba alguna de los ingresos netos de la corporación Desarrollos Insulares, Inc. para calcular lo que, en el referido caso, se describe como

---

[13] Entrada Núm. 632 del caso Núm. SJ2021CV03041 en el SUMAC.
[14] Entrada Núm. 641 del caso Núm. SJ2021CV03041 en el SUMAC.
[15] Entrada Núm. 646 del caso Núm. SJ2021CV03041 en el SUMAC.

una "suma líquida específica periódica de la comunidad".

Segundo error: Erró el TPI al decretar un adelanto basándose exclusivamente en lo determinado por el Tribunal Supremo en el caso Soto v. Colón, 97 DTS 75 (1997), al resolver que procede un pago único, en efectivo, de [un] [millón de dólares] ($1,000,000) en 30 días, y no el pago de "una suma específica periódica de la comunidad, que le permita alimentarse", como sentenció el TS en el referido caso.

Tercer error: Erró el TPI al decretar un adelanto basándose exclusivamente en lo determinado por el Tribunal Supremo en el caso Soto v. Colón, 97 DTS 75 (1997), al decretar el adelanto una vez solicitada la liquidación de la comunidad post-ganancial por parte de la demandante, y no después del divorcio, pero antes de solicitada la liquidación de la comunidad post-ganancial, como ocurrió en el referido caso invocado por el TPI en su resolución.

Cuarto error: Erró el TPI al dictar una resolución que pone fin a la controversia sobre la petición de adelanto de la demandante, habiéndole denegado expresamente al demandado la oportunidad de presentar su prueba y, de esta manera, privarlo de su propiedad, en clara violación al mandato constitucional, de que nadie podrá ser privado de su propiedad sin el debido proceso de ley.

Quinto error: Erró el TPI al adjudicarle a la demandante un adelanto de dinero en efectivo cuando, del propio inventario de bienes adoptado por el TPI, no consta que la comunidad post-ganancial posea dinero en efectivo para distribuir en liquidación.

Sexto error: Erró el TPI al no tomar en cuenta el valor actual del portafolio de acciones, de alrededor de $1,300,000, o inclusive los $400,000 que la demandante reconoció en su testimonio haber recibido de la venta de dicho portafolio de acciones bajo su control desde el matrimonio y con posterioridad al divorcio.

Séptimo error: Erró el TPI al dictar la Resolución a pesar de que, para ese momento, ya el TPI le había adjudicado a la demandante el único bien inmueble incluido en el inventario de bienes sujetos a liquidación, y la demandante-apelada había enajenado dicho bien inmueble para una ganancia de unos $300,000.

Octavo error: Erró el TPI al adjudicar un adelanto de UN MILLÓN DE DÓLARES cuando los bienes sujetos a liquidación serían, en el caso más favorable a la demandante, una participación minoritaria en las acciones de una corporación íntima que no trafican en el mercado de acciones.

Noveno error: Erró el TPI al obligar al demandado a pagarle a la demandante [un millón de dólares] como una "suma líquida periódica para alimentarse", cuando

la demandante no alegó dicha figura jurídica en su demanda.

El 5 de diciembre de 2025, le concedimos un término para que la recurrida se opusiera a la expedición del presente recurso. En la misma, le ordenamos al TPI que nos hiciera entrega de las regrabaciones de las vistas celebradas sobre la solicitud de adelanto.

En atención a nuestra *Resolución*, el 10 de diciembre de 2025, la señora Riera Carrión radicó un *Alegato en oposición a expedición de certiorari*. El 15 de diciembre de 2025, recibimos del TPI una *Moción en cumplimiento de la solicitud de regrabación*, en cumplimiento con la *Resolución* que emitimos el 5 de diciembre de 2025.

Con el beneficio de la comparecencia de las partes y evaluada la prueba oral, procederemos a resolver el recurso ante nuestra consideración.

**II.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *Rivera et al. v. Arcos Dorados et al.*, 212 DPR 194 (2023); *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023). Véase, además, *IG Builders et al v. BBVAPR*, 185 DPR 307, 337 (2012); *Medina Nazario v. McNeil Healthcare LLC*, 194 DPR 723, 728 (2016). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. *Rivera Figueroa v. Joe's European Shop*, 183 DPR 580, 596 (2011). Cónsono con lo anterior, la Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone en lo pertinente lo siguiente:

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas

56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

[. . .]

Si el asunto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra*, debemos pasar entonces a un segundo escrutinio. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso. En aras de ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, Regla __ del Reglamento del Tribunal de Apelaciones, según enmendada, *In re Aprob. Enmdas. Reglamento TA*, 2025 TSPR 42, págs. 62-63, 215 DPR __ (2025), dispone los criterios a considerar para poder atender o no las controversias ante su consideración. *BPPR v. SLG Gómez-López*, 213 DPR 314 (2023). Véase, *Rivera et al. v. Arcos Dorados et al.*, *supra*; *Pueblo v. Rivera Montalvo*, 205 DPR 352, 372 (2020); *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 96-97 (2008). Los criterios que debemos considerar son los siguientes:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:

(A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

(B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Lo anterior impone a este Tribunal la obligación de ejercer prudentemente su juicio al intervenir con el discernimiento del foro de instancia, de forma que no se interrumpa injustificadamente el curso corriente de los casos ante ese foro. *Torres Martínez v. Torres Ghigliotty, supra,* pág. 97.

**B.**

La Regla 104 de Evidencia, 32 LPRA Ap. VI, R. 104, establece lo siguiente:

(B) Oferta de prueba
En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.
El Tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El Tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

La norma general es que objetada la pregunta de un testigo, "la parte que lo presenta debe hacer constar en el récord, con toda la amplitud posible, lo que el testigo, a quien no se ha permitido contestar, hubiera declarado; u obtener que se haga un récord completo de la evidencia que trata de elucidarse por medio de la pregunta objetada, con el fin de que este Tribunal pueda determinar si la prueba, de haber sido creída por la corte inferior, hubiera justificado un resultado distinto del caso". *Pueblo v. López Rivera,*

102 DPR 359, 368 (1974), citando a: *Vicenty v. Corona Brewing Corporation*, 73 D.P.R. 135 (1952). Si la exclusión o admisión errónea de evidencia es de tal envergadura que el tribunal considera que fue un factor decisivo o sustancial en la sentencia, procede revocar y conceder el remedio solicitado. *Pueblo v. Martínez Solís*, 128 DPR 135, 162 (1991). Cuando se ofrezca una prueba para impugnar la exclusión de una prueba ofrecida, el Tribunal debe evaluar el propósito y la pertinencia de la prueba excluida para medir que el justo alcance de su determinación sobre la admisibilidad de la prueba, así como proveer un récord que le permita a esta Corte precisar si la exclusión efectuada fue correcta. *Pueblo v. Franceshini*, 110 DPR 794, 797 (1981).

## C.

Durante la sociedad legal de bienes gananciales, ambos cónyuges son coadministradores de ésta, y si alguno ejerce la administración exclusiva precisa del mandato expreso de otro. *López v. Meléndez*, 143 DPR 282, 288 (1997). Una vez se decreta el divorcio, la sociedad legal de bienes gananciales queda extinguida, nace una comunidad de bienes, en la que los excónyuges son comuneros. *Calvo Mangas v. Aragonés Jiménez*, 115 D.P.R. 219, 228 (1984). Ahora bien, los alimentos entre excónyuges están supeditado a la necesidad de que un excónyuge tenga una situación económica y tenga una necesidad de ello. *Toppel v. Toppel*, 114 D.P.R. 16 (1983). En *López v. Meléndez, supra*, págs. 292-293, el Tribunal Supremo razonó que, ante la falta de necesidad de la excónyuge en tener una pensión alimenticia, resolvió que su excónyuge debía pagarle una suma líquida específica periódica que proviniera de los bienes comunes. En específico, determinó que, la excónyuge tenía derecho al disfrute de los bienes comunes. *López v. Meléndez, supra*, pág. 292.

**III.**

En el caso de autos, el peticionario argumentó que el TPI actuó contrario a lo resuelto en *López v. Meléndez, supra*, debido a que no ordenó el pago de una "suma, líquida específica periódica de la comunidad" con respecto a los bienes que compone la comunidad de bienes post ganancial. De igual forma, argumentó que, el foro primario debió concederle la oportunidad de presentar prueba para refutar la falsedad de la prueba presentada por la señora Riera Carrión.

Luego de un examen sosegado del expediente ante nos, y en correcta práctica apelativa, colegimos que nos abstenemos de ejercer nuestra función revisora y, de intervenir con la determinación del foro primario.

Tras un análisis sigiloso sobre los planteamientos que la peticionaria presentó ante esta Curia, concluimos que el TPI no incurrió en error de derecho ni en abuso de discreción al no permitir que el peticionario testificara que amerite nuestra intervención. El TPI cumplió con la normativa vigente, relacionada a la Regla 104 (B) de Evidencia, *supra*, y la jurisprudencia aplicable tras razonar que no era pertinente el testimonio del señor Albors Lahongrais. A la luz de lo esbozado, y en ausencia de prueba que nos permita resolver en contrario, denegamos expedir el auto de *certiorari* que nos ocupa, al amparo de lo dispuesto en la Regla 52.1 de Procedimiento Civil, *supra*, y la Regla 40 de nuestro Reglamento, *supra*.

**IV.**

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari* solicitado.

Notifíquese.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones